UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lynn Letizi,<br><br>    *Plaintiff*,<br><br>v.<br><br>IQ Data International, Inc.; Legend Park Apartments of Schaumburg, LLC,<br><br>    *Defendants*. | Case No. 20-cv-1226<br><br>Hon.<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

Ms. Lynn Letizi (Plaintiff) brings this consumer protection action against Legend Park Apartments of Schaumburg, LLC (Legend) under 28 U.S. C § 2201 to declare that Plaintiff does not owe a debt allegedly owed to Legend; and against IQ Data International, Inc. (IQ Data) for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* in its attempts to collect that alleged debt.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 15 U.S.C. §1692, 47 U.S.C. § 227, and 28 U.S.C. §§ 1331 and 1337.

2. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(2) as this is the district in which a substantial part of the events or omissions giving rise to the claim occurred, Plaintiff resides in the Northern District of Illinois, and Defendants conduct business in the Northern District of Illinois.

**PARTIES**

3.  Plaintiff is a natural person who at all relevant times resided, and currently resides, in this District.

4.  Plaintiff is informed and believes that Legend is a domestic Illinois corporation engaged in business as a residential landlord with its principal offices located at 1306 Waukegan Road, Suite 200, Glenview, Il 60025.

5.  Plaintiff is informed and believes that IQ Data is a foreign corporation registered to do business in Illinois as a collection agency with its principal offices located at 21222 30th Dr SE Ste 120, Bothell, WA, 98021.

6.  According to Defendant's website[1], IQ Data "has been serving the collection needs of businesses and consumers since 1998. We are headquartered in Bothell, Washington and all our debt recovery specialists are located in the United States. We are a Professional Collection Agency, providing services to the apartment industry."

7.  Defendant is a "debt collector" as defined by §1692a(6) of the FDCPA because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

8.  The Consumer Financial Protection Bureau Consumer Complaint Database[2] lists 1,439 consumer complaints regarding IQ Data International's debt collection methods.

9.  A significant portion of those consumer complaints relate to "attempts to collect debt not owed," "communication tactics," and "false statements or representation."

---

[1] https://www.iqdata-inc.com/about-us (last accessed December 4, 2019).
[2] https://www.consumerfinance.gov/data-research/consumer-complaints/ (last accessed December 4, 2019).

**FACTUAL ALLEGATIONS**

10. Plaintiff Lynn Letizi is a senior citizen who lives alone and subsists on a limited income.

11. Plaintiff moved into an apartment at the Legend Park Apartments of Schaumburg, LLC, in May of 2009.

12. Plaintiff renewed her lease annually from 2009 up through August of 2018.

13. Plaintiff signed a new annual lease on August 1, 2018

14. From August of 2018 up through April of 2019, it was Plaintiff's practice to deliver a check on the first of the month to Legend post-dated for the 15th of that same month.

15. At no point during that period did Legend ever object to that practice or fail to accept Plaintiff's check.

16. On May 1, 2019, when Plaintiff attempted to deliver her post-dated check as was her custom and practice, Legend rejected said payment and told her she needed to be out of her apartment by May 23, 2019.

17. On May 7, 2019, Legend placed a 5-day Notice to Quit on Plaintiff's apartment door demanding payment of $1,310.00.

18. Later that same day, Plaintiff walked to Legend's rental office and offered to pay the amount due.

19. Legend's employee told Plaintiff that "we don't want you here anymore," rejected her tender, and told her she needed to be out of her apartment by May 23, 2019.

20. Legend's employee confirmed that they were terminating the lease and that Ms.

Letizi would no longer be bound by the terms of that agreement.

21. Believing that her lease had been repudiated and that any obligation to her landlord had been extinguished, Plaintiff moved out of her apartment by May 23, 2019.

22. Plaintiff received a debt collection letter from Defendant IQ Data dated June 18, 2019, demanding payment of $3,805 related to a balance allegedly owed to Legend Park Apartments.

23. In response to that letter, Plaintiff called the phone number listed on IQ Data's letter (888-248-2509) and spoke with an IQ Data employee named Jesse Smith on June 25, 2019.

24. Jesse Smith told Plaintiff that she had to pay the amount immediately or "5% interest will be added every day" to the alleged amount due.

25. During that call that employee also told Plaintiff that if she did not pay. IQ Data would report the debt to consumer reporting agencies.

26. During that call that employee also told Plaintiff that if she did not pay immediately, Plaintiff "would not be able to rent an apartment anywhere and would be thrown out on the street."

27. Plaintiff sought assistance from the Willow Creek Care Center legal ministry the evening of July 9, 2019.

28. Plaintiff met with volunteer attorney Danielle Soheil, who called IQ Data at the same number listed on IQ Data's letters.

29. Ms. Soheil asked the IQ Data employee who picked up the phone to verify that this was a legitimate debt and not a scam.

30. In response, the employee refused to believe that Ms. Soheil was an attorney, used rude and offensive language, and said Plaintiff just needed to pay the debt instead of talking to lawyers.

31. On or about October 26, 2019, Plaintiff received a call from an IQ Data employee named Shannon.

32. During that phone call, Plaintiff told Shannon that she had retained the undersigned as her attorney for purposes of the debt.

33. Plaintiff also told Shannon that she was unable to pay the amount demanded and would not be making payments.

34. Instead of concluding the phone call, Shannon yelled at Plaintiff and demanded to know why she didn't have the money to pay, and asked Plaintiff "what have you been doing all this time since we contacted you?"

35. Shannon concluded the phone call by telling Plaintiff that she should not have retained a lawyer.

36. IQ Data continued to attempt to call Plaintiff's cell phone.

## COUNT I
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692E, *ET SEQ.*. (FDCPA)
### *AGAINST IQ DATA INTERNATIONAL, INC.*

37. Plaintiff realleges and incorporates all paragraphs above.

38. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

39. The subject debt qualifies as a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or

household purposes.

40. IQ Data qualifies as a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail, credit reporting, and/or the telephones to collect or attempt to collect delinquent consumer accounts.

41. IQ Data's communications to Plaintiff were made in connection with a collection of the alleged debt.

42. In its behavior described above, IQ Data violated the following provisions of 15 U.S.C. § 1692:

    i. § 1692c(a), by continuing to communicate with Plaintiff after it was notified that she was represented by undersigned counsel;

    ii. § 1692d by yelling at Plaintiff over the phone, and using offensive, harassing, and threatening language such as the threat that Plaintiff would become homeless if she failed to pay the debt and that she should not have consulted with an attorney;

    iii. § 1692e(2), prohibiting the false representation of the character, amount, or legal status of any debt, or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt, because (1) Plaintiff owes no money to Defendant Legend and (2) IQ Data had no legal basis to charge Plaintiff 5% interest a day on the allege debt;

    iv. § 1692e(5), prohibiting a debt collector from threatening to take any action that cannot be legally taken or that is not intended to be taken, because Defendant IQ Data (1) falsely threatened to charge 5% interest a day and (2)

        falsely claimed it would report the alleged debt to consumer reporting agencies when it had no intention to do so.

    v. § 1692f, prohibiting unfair or unconscionable means to collect a debt, by attempting to collect on a debt which is not owed, in addition to the harassing and misleading violations outlined above.

As a direct result of IQ Data's statutory violations, Plaintiff was injured:

    i. Plaintiff was materially misled as to whether she owed Legend the alleged debt;

    ii. Plaintiff suffered the informational injuries Congress sought to protect when it enacted the FDCPA, such as the right to be free from unfair, abusive, and deceptive debt collection practices described above;

    iii. Plaintiff was forced to spend money on gas, postage, and numerous hours of her life as a direct result of IQ Data's unlawful debt collection practices;

    iv. Plaintiff suffered emotional distress, anguish, frustration, and terror as a result of IQ Data's threats that she would be thrown out on the street and become homeless, that the alleged debt would increase by 5% every day she did not pay it, and that the alleged debt would be furnished to consumer reporting agencies.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

  I. Declare that IQ Data's practices complained of herein are unlawful and violate the FDCPA;

  II. Award Plaintiff statutory and actual damages against IQ Data, in an amount to be

determined at trial, for the underlying FDCPA violations;

III. Award Plaintiff costs and reasonable attorney fees against IQ Data as provided under 15 U.S.C. §1692k; and

IV. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II
### DECLARATORY JUDGMENT ACT, 28 U.S. C § 2201
*AGAINST LEGEND PARK APARTMENTS OF SCHAUMBURG, LLC*

43. Plaintiff realleges and incorporates all paragraphs above.

44. On information and belief there exists an actual controversy among the parties as to whether Plaintiff owes Legend the alleged debt at issue in this action.

45. A landlord is precluded from obtaining a judgment in a forcible entry and detainer action if a tenant tenders or offers to pay rent to the landlord in compliance with the notice to terminate and the landlord rejects that offer. *Madison v. Rosser*, 279 N.E.2d 375, 3 Ill.App.3d 851 (1st Dist. 1972).

46. By rejecting Plaintiff's offered tender of the total amount due as described above then wrongfully demanding that Plaintiff vacate, Legend forfeited its right to seek any amount due from Plaintiff.

WHEREFORE, Plaintiff prays this Honorable Court:

I. Find that Plaintiff owes no debt whatsoever to Legend Park Apartments of Schaumburg, LLC as a result of its failure to accept Plaintiff's tender of all amounts due under the May 6, 2019 5-day Notice to Quit; and

II. Award any other relief as this Honorable Court deems just and appropriate.

Respectfully submitted,

*s/Steven J. Uhrich*

Steven J. Uhrich (6310369)
Uhrich Law, P.C.
1 N. State Street, Suite 1500
Chicago, IL 60602
p: 773-969-6337
f: 773-496-6968
steven@uhrichlawpc.com

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

                                               *s/Steven J. Uhrich*

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that any defendant named above take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any named defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of any defendant.

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that counsel for Plaintiff claims a lien upon any recovery herein for any attorney's fees authorized by the above fee-shifting statutes or awarded by the Court. All rights relating to attorneys' fees have been assigned to counsel.